UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CARLOS DANIEL OJEDA SALAZAR,

                Petitioner,

v.

UNKNOWN PARTY et al.,

                Respondents.

_____/

Case No. 1:26-cv-2041

Honorable Paul L. Maloney

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.      Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.7.) In an order entered on July 15, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on July 20, 2026, (ECF No. 4.)

## II.    Factual Background

Petitioner is a native and citizen of Venezuela (Pet., ECF No. 1, PageID.3.). On July 12, 2024, Petitioner applied for admission into the United States at the San Ysidro Port of Entry after making an appointment using the CBP One Mobile Application. (*Id.*; Notice to Appear (NTA), ECF No. 4-1, PageID.53.) At that time, the Department of Homeland Security (DHS) issued Petitioner a Form I-862, NTA, charging him with inadmissibility pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) for being "an immigrant who, at the time of application for admission, is not in possession of [valid immigration and travel documents]" (*id.*, PageID.53–56.) DHS then paroled Petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5). (Form I-94, ECF No. 1-12, PageID.41 (indicating that Petitioner's "Class of Admission" is "DT"[1]); Parole Termination Letter, ECF No. 4-4, PageID.65.)

On November 28, 2024, Petitioner was granted Employment Authorization until July 11, 2026. (2024 Form I-797 Notice of Action, ECF No. 1-5, PageID.18.) On April 10, 2026, Petitioner's Employment Authorization was extended until October 9, 2027. (2026 Form I-797 Notice of Action, ECF No. 1-12, PageID.40.)

On July 9, 2026, Department of Homeland Security (DHS) agents encountered and arrested Petitioner. (2026 Form I-213, ECF No. 4-3, PageID.62.) On July 13, 2026, DHS served Petitioner with a letter titled: "Termination of Parole Issued Pursuant to 8 U.S.C. § 1182(d)(5) and 8 C.F.R.

---

[1]  *See* United States Citizenship and Immigration Services Guidance Website, https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (under "Non-Categorical Parole" heading, select "What does 'Non-Categorical Parole' mean?") ("Aliens who are outside of the United States may request to be paroled into the United States based on urgent humanitarian reasons or a significant public benefit. These aliens are not paroled into the United States under a categorical parole program or process. Often, the Class of Admission (COA) for these aliens is 'DT' though other parole related COAs may have been used.").

§ 212.5(e)(2)," stating that Petitioner's parole was valid until July 11, 2025 (Termination of Parole Letter, ECF No. 4-4, PageID.65.)[2]

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

#### A.    Statutory Basis for Petitioner's Detention

Here, Petitioner entered the United States at a port of entry and was subsequently paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). Petitioner also filed a Form I-589 Application for Asylum and Withholding Removal, which remains pending.

The INA "establishes the framework governing noncitizens' entry into and removal from the United States, with regulations promulgated by the enforcing agencies providing further governance." *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1132 (D. Or. 2025). "Noncitizens who arrive at a port of entry without a visa or other entry document, like Petitioner, are deemed 'inadmissible' under 8 U.S.C. § 1182(a)(7)" due to their lack of entry documents. *Id.* at 1132 & n.7 (noting that "[d]epending on the circumstances, other categories of inadmissibility may also

---

[2] The materials submitted by the parties do not suggest that Petitioner is subject to a final order of removal or that Petitioner is subject to detention under 8 U.S.C. § 1226(c).

apply, but § 1182(a)(7) applies for noncitizens without proper documentation"). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of persecution." *Id.* at 1132 & n.8 (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The government may place the noncitizen into expedited removal proceedings, *see* 8 U.S.C. § 1225(b)(1), or the government may place the noncitizen into regular removal proceedings under 8 U.S.C. § 1229(a). *See Y-Z-L-H*, 792 F. Supp. 3d at 1132–33 (citing 8 U.S.C. § 1225(b)(2)).

To terminate the previously granted parole, the agency must comply with the applicable regulatory and statutory requirements. As set forth in 8 C.F.R. § 212.5(e)(2)(i), which governs the "[t]ermination of parole,"

> In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i).

Paragraph (e)(1) provides for the automatic termination of parole without written notice where the noncitizen has either departed from the United States or at the expiration of time for which the parole was authorized. The parties have not suggested that Petitioner departed from the United States. Additionally, the record before the Court belies Respondents' claim that Petitioner's parole expired automatically on July 11, 2025. (*See* Resp., ECF No. 4, PageID.46.) Petitioner submitted a Form I-94 which listed the "Admit Until Date" of Petitioner's Parole as April 24, 2026. (Most Recent Form I-94, ECF No. 1-12, PageID.41.) When DHS terminates a noncitizen's parole, it will update the information on the Form I-94. *See* United States Citizenship and Immigration Services Guidance Website, https://www.uscis.gov/save/current-user-

agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (under "Non-Categorical Parole" heading, select "Is DHS revising the parolee's Form I-94, Arrival/Departure Record, Admit Until Date if parole is terminated early?") ("Yes. If DHS terminates an alien's parole before the expiration date of the parole period, DHS will update the Form I-94, Arrival/Departure Record to reflect the new parole termination date."). Therefore, while the Most Recent Form I-94 does not establish that the original expiration date of Petitioner's parole was April 24, 2026, there would also be no reason to update the Form I-94 to terminate Petitioner's parole on April 24, 2026, if Petitioner's parole had already expired automatically on July 11, 2025. (*See* Most Recent Form I-94, ECF No. 1-12, PageID.41.)

Therefore, "[u]nder the governing regulation, [§ 1182(d)(5)(A)] parole may be terminated only if the purpose of parole is accomplished, or humanitarian reasons and the public benefit no longer warrant parole." *Loaiza Arias v. LaRose*, No. 3:25-cv-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (citing 8 C.F.R. § 212.5(e)). As explained below, the Court concludes that Respondents have failed to follow the applicable statutory and regulatory provisions to terminate Petitioner's parole at the time of his July 9, 2026, arrest. *Cf. Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872 (JMC), 2025 WL 2192986, at *2 (D.D.C. Aug. 1, 2025) (holding that the government failed to follow the applicable statutory and regulatory provisions and that paroled noncitizens cannot be subject to expedited removal proceedings); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *5–7 (E.D. Mich. Oct. 29, 2025) (same); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594, at *10 (N.D. Ohio Oct. 16, 2025) (same).

Termination "upon written notice" to the noncitizen after one of the specified determinations in 8 C.F.R. § 212.5(e)(2)(i) is the only procedural safeguard available to the

noncitizen. *See United States v. Lagarda-Aguilar*, 617 F.2d 527, 528 (10th Cir. 1980). Therefore, "written notice is essential to effectuate a termination." *Id.* Here, there is no indication that Petitioner was served with written notice of the termination of his parole prior to or at the time of his July 9, 2026, arrest. Therefore, at the time of his July 9, 2026, Petitioner's parole remained valid.

Second, based on the information before the Court, it does not appear that the purpose of Petitioner's parole has been accomplished. Petitioner left Venezuela, seeking asylum in the United States, and Petitioner entered the United States at a port of entry. At that time, Petitioner was granted parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which provides for parole into the United States "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A). Petitioner filed a Form I-589 Application for Asylum and Withholding Removal, which remains pending. Thus, when Petitioner was recently arrested and detained, Petitioner was still seeking asylum. Respondents make no argument about whether the requirements for termination of parole in § 1182(d)(5)(A) and its regulations were satisfied prior to Petitioner's arrest. Moreover, the record before the Court does not establish that the humanitarian reason or public benefit that justified Petitioner's parole no longer applied at the time of Petitioner's arrest. After Petitioner was arrested, DHS issued Petitioner a letter stating that Petitioner's parole was terminated, retroactive to July 11, 2025. (Parole Termination Letter, ECF No. 4-4, PageID.65.) In this letter, DHS stated that "ICE has thoroughly reviewed the specific facts of your case," and that "[n]either humanitarian reasons nor public benefit warrant your continued parole." (*Id*.) But this letter was issued after Petitioner's arrest, so it does not establish that the humanitarian reason or public benefit that justified Petitioner's parole no longer applied at the time of Petitioner's arrest. And in their

response to this petition, Respondents do not elaborate on or clarify the reasons for terminating Petitioner's parole.

This Court has held on numerous occasions "that just as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute." *Delgado Vilchez v. Warden, North Lake Corr. Facility*, No. 1:26-cv-216, 2026 WL 570449, at *4 (W.D. Mich. Mar. 2, 2026) (quoting *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025)); *see also*, *e.g.*, *Caceres Martinez v. Raycraft*, No. 1:26-cv-547, 2026 WL 621359, at *5 (W.D. Mich. Mar. 5, 2026); *Nazari v. Raycraft*, No. 1:26-cv-540, 2026 WL 607704, at *5 (W.D. Mich. Mar. 4, 2026); *Ramirez Gonzalez v. Dep't of Homeland Sec.*, No. 1:26-cv-373, 2026 WL 547955, at *5 (W.D. Mich. Feb. 27, 2026). The Court holds the same here, for the reasons contained in those opinions. And just as in those cases, the Court finds that Respondents acted unlawfully here by revoking an individual's parole without any "indication in the record before the Court that any such case-by-case determination regarding the revocation of Petitioner's parole was made." *Vilchez*, 2026 WL 570449, at *4.

Respondents do not attempt to distinguish this case from those previous cases or argue that Petitioner's parole was revoked based on an individualized determination. Rather, Respondents merely claim that Petitioner's parole was "terminated" on July 11, 2025. (Resp., ECF No. 6, PageID.14; Most Recent Form I-94, ECF No. 4-2, PageID.26), the retroactive termination date contained in the letter DHS issued to Petitioner after his arrest. The conclusory statement in the termination letter that "ICE has thoroughly reviewed the specific facts of your case" is insufficient to establish that ICE conducted an individualized determination. (Parole Termination Letter, ECF No. 4-4, PageID.65.) Merely making a boilerplate representation that such a determination took place—absent any discussion of facts specific to Petitioner's case that are relevant to the revocation

of parole—does not satisfy the statute's requirements, as it is impossible for the Court to determine whether any such determination actually occurred.

In summary, as explained above, based on the information that is presently before the Court, there is no indication that Respondents followed the applicable statutory and regulatory requirements to revoke or terminate Petitioner's parole. If Respondents did not follow those requirements, then they did not have the authority to arrest and detain Petitioner, "unless there [wa]s some other valid reason to arrest him." *Mata Velasquez*, 794 F. Supp. 3d at 145; *cf. Norfolk S. Ry. Co. v. U.S. Dep't of Lab.*, No. 21-3369, 2022 WL 17369438, at *6 (6th Cir. Dec. 2, 2022) (discussing that "an agency's action that fails to observe the procedures required by its own regulations should be set aside" (citation omitted)); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations[,] . . . [and] '[a]n agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.'" (additional internal quotation marks omitted) (quoting *Sameena, Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998))). Respondents do not claim that they had any reason to arrest and detain Petitioner other than his status as a noncitizen. Indeed, Respondents argue that *any noncitizen*, regardless of whether they are already present and residing in the United States, is "an alien seeking admission" subject to mandatory detention under § 1225. As set forth in *Lopez-Campos v. Raycraft*, Nos. 25-1965, 1969, 1978, 1982, 2026 WL 1283891 (6th Cir. May 11, 2026), the United States Court of Appeals for the Sixth Circuit, this Court, and other courts throughout the country have rejected this argument.

Accordingly, for the reasons set forth above, the Court concludes that Respondents failed to follow the applicable statutory and regulatory requirements to revoke or terminate Petitioner's § 1182(d)(5)(A) parole.

**B.      Fifth Amendment Due Process Considerations**

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Lopez-Campos*, the Sixth Circuit Court of Appeals explained:

> Noncitizens who have "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903). Thus, noncitizens within the interior of the United States are entitled to the protections of the Due Process Clause, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993*); see also Demore v. Kim*, 538 U.S. 510, 523 (2003). Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." *Yamataya*, 189 U.S. at 100–01.

*Lopez-Campos*, 175 F.4th at 732. The Sixth Circuit therefore upheld the lower courts' determinations the government's detention of the *Lopez-Campos* petitioners "without bond under § 1226(a) was a deprivation of liberty that violated [their] due process rights." *Id*. at *13.

Petitioner is likewise detained under § 1226(a) and has been denied an individualized bond hearing. Therefore, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights. *See id.*; *see also Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *6–8 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025

WL 3562577, at *7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *6–8 (W.D. Mich. Dec. 12, 2025).

**V.      Other Claims and Other Forms of Relief**

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

<u>**Conclusion**</u>

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from custody, subject to any conditions that existed under Petitioner's § 1182(d)(5)(A) parole. Additionally, the Court will enjoin Respondents from re-detaining Petitioner absent a material change in circumstances unless the requirements of due process have been satisfied. The Court will also order Respondents to file a status report within three days of the issuance of the Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment.


Dated:    August 3, 2026                          /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge